# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

MARYLAND CASUALTY COMPANY,

    Plaintiff,

v.

                    CIVIL ACTION FILE NO.:
                    4:14-CV-0015-HLM

MCG MANAGEMENT, INC., FOR
ITSELF AND DOING BUSINESS AS
CHILDREN'S DENTAL CENTER OF
ROME, et al.,

    Defendants.

## ORDER

This case is before the Court on Plaintiff's Motion for

Summary Judgment [76].

# I.  Background

## A.  Procedural Background

On January 23, 2014, Plaintiff filed this lawsuit. (Docket Entry No. 1.)  Plaintiff filed various Amended Complaints, the last of which was Plaintiff's Third Amended Complaint, filed on December 4, 2014.  (Docket Entry No. 65.)  Plaintiff sought a declaration that it had no duty to defend or indemnify Defendant MCG Management, Inc. ("Defendant MCG") for claims asserted in a number of lawsuits filed by parents of minor children (the "Underlying Lawsuits").  (Third Am. Compl. (Docket Entry No. 65) ¶¶ 1, 58.)

On April 20, 2015, Plaintiff filed its Motion for Summary Judgment.  (Docket Entry No. 76.)  Defendant MCG filed a

AO 72A
(Rev.8/8

response opposing the Motion for Summary Judgment. (Docket Entry No. 85.) Defendants B.C., Angela Carter, Jerry Carter, B.S.F., Lionel Bernard Peugh, Brandi Marie Shanks, and W.K.P. also filed a response in opposition to the Motion. (Docket Entry No. 83.) Defendants Terri Blalock, E.B., E.E., and Carrie Edmondson did not file responses to the Motion. (See generally Docket.) The Court, however, finds that the filings of the other Defendant adequately represent the interests and positions of Defendants Terri Blalock, E.B., E.E., and Carrie Edmondson. Plaintiff has filed a reply in support of its Motion (Docket Entry No. 88), and the Court concludes that the matter is ripe for resolution.

AO 72A
(Rev.8/8
2)

## B. Factual Background

Keeping in mind that, when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts. <u>Strickland v. Norfolk S. Ry. Co.</u>, 692 F.3d 1151, 1154 (11th Cir. 2012). This statement does not represent actual findings of fact. <u>Rich v. Sec'y, Fla. Dep't of Corr.</u>, 716 F.3d 525, 530 (11th Cir. 2013). Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case or controversy.

4

## 1. Initial Matters

As required by the Local Rules, Plaintiff filed a Statement of Material Facts As to Which There is No Genuine Issue to Be Tried ("PSMF"). (Docket Entry No. 76-2.) As also required by the Local Rules, Defendant MCG filed a response to PSMF ("DMRPSMF") (Docket Entry No. 86), and Defendants B.C., Angela Carter, Jerry Carter, B.S.F., Lionel Bernard Peugh, Brandi Marie Shanks, and W.K.P. filed a response to PSMF ("DCRPSMF") (Docket Entry No. 82).[1] The Court addresses PSMF, DMRPSMF, and DCRPSMF infra.

---

[1]Plaintiff also filed replies to the DMRPSMF and DCRPSMF. (Docket Entry Nos. 89-90.) The Local Rules, however, do not provide for a party to file a reply to a response to a Statement of Material Facts. The Court therefore has not considered Plaintiff's replies to DMRPSMF and DCRPSMF.

5

### 2. Issuance of the Policy

Plaintiff issued policy number PAS01948241 to Defendant MCG beginning for the policy period October 3, 2007 to October 3, 2008 and renewing through policy period October 3, 2012 to October 3, 2013 (collectively, the "Policies"). (PSMF ¶ 1; DMRPSMF ¶ 1; DCRPSMF ¶ 1.)

### 3. Defendant MCG

Defendant MCG manages a pediatric dental practice in Rome, Georgia, which specializes in Medicaid recipients. (PSMF ¶ 2; DMRPSMF ¶ 2; DCRPSMF ¶ 2.) Defendant MCG does not employ any dentists and does not own an interest in any dentist's practice. (PSMF ¶ 3; DMRPSMF ¶ 3; Federal Rule of Civil Procedure 30(b)(6) Deposition of MCG Management, Inc. ("Rule 30(b)(6) Dep.") (Docket

6

Entry No. 78) at 19.) According to Defendant MCG, it considers the dentists as independent contractors, and the dentists are not employees of Defendant MCG. (Rule 30(b)(6) Dep. at 19.)

Dr. Maheshvar Patel was one of the dentists who practiced at Defendant MCG. (PSMF ¶ 4; DMRPSMF ¶ 4; DCRPSMF ¶ 4.) According to Defendant MCG, it entered into a contract with Dr. Patel. (Rule 30(b)(6) Dep. at 20.) Dr. Patel would have been required to obtain his own malpractice insurance. (Id. at 20-21.) Under Defendant MCG's business plan, Dr. Patel would bill for services performed, Defendant MCG would submit the claims, and Defendant MCG would receive the money. (Id. at 21.)

AO 72A
(Rev.8/8

Defendant MCG would pay Dr. Patel's bills for him and would pay his employees. (Id.)

### 3. The Underlying Lawsuits

Five of Dr. Patel's minor patients, E.E., B.C., B.S.F., E.B., and W.K.P. (collectively, the "Underlying Plaintiffs"), and their respective parents, filed lawsuits against Defendant MCG and Dr. Patel asserting various injury claims as the result of allegedly improper, unnecessary, and excessive dental treatments that the Underlying Plaintiffs received while at Defendant MCG. (PSMF ¶ 6; DMRPSMF ¶ 6; DCRPSMF ¶ 6.)

### a. The Edmondson Lawsuit

On December 13, 2013, E.E. and his mother, Carrie Edmondson (collectively, the "Edmondson Claimants"), filed

a lawsuit against Dr. Patel and Defendant MCG. (PSMF ¶ 7; DMRPSMF ¶ 7; Docket Entry No. 65-1.) The Edmondson Claimants allege that, on April 4 and 6, 2012, E.E. obtained dental treatment from Defendant MCG and Dr. Patel. (PSMF ¶ 8; DMRPSMF ¶ 8; Docket Entry No. 65-1 ¶¶ 10-11.) The Edmondson Claimants allege that Dr. Patel removed caries, or cavities, on eight of E.E.'s teeth and performed various other treatments, including pulpotomies, on six other teeth. (PSMF ¶ 9; DMRPSMF ¶ 9; Docket Entry No. 65-1 ¶¶ 11-12.) During the treatments, E.E. was given anesthetic and restrained by a papoose board. (PSMF ¶ 10, as modified per DMRPSMF ¶ 10; Docket Entry No. 65-1 ¶¶ 11-12.)

9

The Edmondson Claimants allege that, as a result of the above treatment, E.E. "suffered physical injury, severe and prolonged pain, mental anguish, and was forced to seek additional dental treatment." (PSMF ¶ 11; DMRPSMF ¶ 11; Docket Entry No. 65-1 ¶ 13.) The Edmondson Claimants allege that the use of anesthesia and the papoose board during E.E.'s dental treatment was inappropriate, incorrect, and unlawful. (PSMF ¶ 12; DMRPSMF ¶ 12; Docket Entry No. 65-1 ¶¶ 21, 23.)

The Edmondson Claimants asserted claims of medical malpractice, battery, negligence under the doctrine of respondeat superior, and punitive damages. (PSMF ¶ 13; DMRPSMF ¶ 13; Docket Entry No. 65-1 ¶¶ 14-37.) The Edmondson Claimants alleged that Defendant MCG's

10

AO 72A

(Rev.8/8

"conduct . . . was intentional, willful and demonstrates that entire want of care which raises the presumption of a conscious indifference to the consequences." (PSMF ¶ 54; DMRPSMF ¶ 54; Docket Entry No. 65-1 ¶ 37.) Plaintiff issued a letter to Defendant MCG indicating that it was defending Defendant MCG in the Edmondson Lawsuit under a full reservation of rights. (Docket Entry No. 76-5.)

### b. The Shanks Lawsuit

On April 24, 2014, B.S.F. and her mother, Brandi Marie Shanks (collectively, the "Shanks Claimants") filed a lawsuit against Dr. Patel and Defendant MCG (the "Shanks Lawsuit"). (PSMF ¶ 15; DMRPSMF ¶ 15; DCRPSMF ¶ 15.) The Shanks Claimants allege that, on September 20, 2012, B.S.F. obtained dental treatment from Defendant MCG and

11

Dr. Patel. (PSMF ¶ 16; DMRPSMF ¶ 16; DCRPSMF ¶ 16.) The Shanks Claimants allege that Dr. Patel performed treatments on seven of B.S.F.'s teeth, including two crowns, three amalgam fillings, two composite restorations, and additional crowns and pulp treatments. (PSMF ¶ 17; DMRPSMF ¶ 17; Docket Entry No. 65-3 ¶¶ 13-14, 19.) The Shanks Claimants also allege that during the treatment, B.S.F. was given nitrous oxide for 32 minutes, as well as "local anesthetic 1 carpule of 2% lidocaine with 1:100,000, epinephrine and 1 and ¾ carpule of Mepivacaine 3% with no epinephrine." (Docket Entry No. 65-3 ¶ 21.)

The Shanks Claimants allege that the dental treatment performed on B.S.F. "was not medically necessary and performed in a substandard fashion." (PSMF ¶ 20;

AO 72A
(Rev.8/8

DMRPSMF ¶ 20; DCRPSMF ¶ 20.) The Shanks Claimants allege that Defendant MCG knew or should have known that Dr. Patel was performing unnecessary medical procedures and was "not qualified to provide dental care to pediatric patients." (PSMF ¶ 21; DMRPSMF ¶ 21; DCRPSMF ¶ 21.)

Based on the above allegations, the Shanks Claimants assert claims of professional negligence, negligent hiring, negligent retention, punitive damages - conscious indifference, and punitive damages - specific intent to cause harm. (PSMF ¶ 22; DMRPSMF ¶ 22; DCRPSMF ¶ 22.) The Shanks Claimants allege that Defendant MCG's alleged conduct "constitutes willful misconduct, malice, fraud, wantonness, oppression, or the entire want of care which would raise the presumption of conscious indiffernece

13

AO 72A
(Rev.8/8
2)

to consequences." (PSMF ¶ 55; DMRPSMF ¶ 55; DCRPSMF ¶ 55.) The Shanks Claimants further allege that Defendant MCG and Dr. Patel "acted with specific intent to cause harm." (PSMF ¶ 56; DMRPSMF ¶ 56; Docket Entry No. 65-3 ¶¶ 60-61.) Plaintiff sent a letter to Defendant MCG indicating that it was defending Defendant MCG in the Shanks Lawsuit under a full reservation of rights. (Docket Entry No. 76-5.)

### c. The Carter Lawsuit

On April 23, 2014, B.C. and her parents, Angela and Jerry Carter (collectively, the "Carter Claimants"), filed suit against Dr. Patel and Defendant MCG (the "Carter Lawsuit"). (PSMF ¶ 24; DMRPSMF ¶ 24; DCRPSMF ¶ 24.) The Carter Claimants allege that, on April 18 and 29, 2011,

14

and on February 10 and 17, 2012, B.C. obtained dental treatment from Defendant MCG and Dr. Patel. (PSMF ¶ 25; DMRPSMF ¶ 25; DCRPSMF ¶ 25.) The Carter Claimants allege that on April 29, 2011, Dr. Patel treated eight of B.C.'s teeth with dental composite restorations. (Docket Entry No. 65-2 ¶ 16.) The Carter Claimants allege that on February 17, 2012, Dr. Patel treated thirteen of B.C.'s teeth with dental restorations and performed pulp or nerve treatments on nine of B.C.'s teeth. (Id. ¶ 23.) The Carter Claimants allege that Dr. Patel restrained B.C. with a papoose board during the April 29, 2011, and February 17, 2012, visits, and that he failed to note what, if any anesthesia he used. (Docket Entry No. 65-2 ¶¶ 18-19, 25-26.) The Carter Claimants also allege that the anesthesia

15

given to B.C. was insufficient for her to undergo treatment, unnecessarily causing her "significant pain and discomfort." (PSMF ¶ 28; DMRPSMF ¶ 28; DCRPSMF ¶ 28.) The Carter Claimants allege that the dental treatment "was not medically necessary" and caused B.C. "significant pain and discomfort that was unnecessary." (PSMF ¶ 29; DMRPSMF ¶ 29; DCRPSMF ¶ 29.) Additionally, the Carter Claimants allege that Defendant MCG knew or should have known that Dr. Patel "was performing unnecessary medical procedures" and was "not qualified" to provide "dental services to pediatric patients." (PSMF ¶ 30; DMRPSMF ¶ 30; DCRPSMF ¶ 30.)

Based on the above allegations, the Carter Claimants assert claims of professional negligence, negligent hiring,

16

AO 72A
(Rev.8/8

negligent retention, punitive damages - conscious indifference, and punitive damages - specific intent to cause harm. (PSMF ¶ 31; DMRPSMF ¶ 31; DCRPSMF ¶ 31.) The Carter Defendants allege that Defendant MCG's conduct "constitutes willful misconduct, malice, fraud, wantonness, oppression, or the entire want of care which would raise the presumption of conscious indifference to consequences." (PSMF ¶ 55; DMRPSMF ¶ 55; DCRPSMF ¶ 55.) The Carter Defendants further allege that Dr. Patel and Defendant MCG "acted with the specific intent to cause harm." (Docket Entry No. 65-2 ¶¶ 63-64.) Plaintiff sent a letter to Defendant MCG indicating that it was defending Defendant MCG in the Carter Lawsuit under a full reservation of rights. (Docket Entry No. 76-5.)

17

### d. The Blalock Lawsuit

On July 17, 2014, E.B. and her mother, Terri Blalock McGregor (collectively, the "Blalock Claimants"), filed a lawsuit against Dr. Patel and Defendant MCG (the "Blalock Lawsuit"). (PSMF ¶ 33; DMRPSMF ¶ 33; Docket Entry No. 65-4.) The Blalock Claimants allege that, on July 18 and 19, 2012, E.B. obtained dental treatment from Defendant MCG and Dr. Patel. (PSMF ¶ 34; DMRPSMF ¶ 34; Docket Entry No. 65-4 ¶¶ 11, 16.) The Blalock Claimants allege that Dr. Patel placed five crowns on E.B.'s teeth. (PSMF ¶ 35; DMRPSMF ¶ 35; Docket Entry No. 65-4 ¶¶ 15, 17.) The Blalock Claimants allege that, during the July 18, 2012, and July 19, 2012, visits, Dr. Patel restrained E.B. using a papoose board. (Docket Entry No. 65-4 ¶¶ 14, 19.) The

18

Blalock Claimants also allege that, during the July 19, 2012, visit, Dr. Paten used "the injection of local anesthesia and nitrous oxide" on E.B. (Id. ¶ 17.) The Blalock Claimants allege that the anesthesia used on E.B. was insufficient to allow her to undergo treatment, unnecessarily causing her "significant pain and discomfort." (Id. ¶ 20; PSMF ¶ 37; DMRPSMF ¶ 37.) The Blalock Claimants further allege that the dental treatment given to E.B. "was unnecessary and/or excessive" and caused E.B. "significant pain and discomfort that was unnecessary." (Docket Entry No. 65-4 ¶¶ 18, 20, 22; PSMF ¶ 38; DMRPSMF ¶ 38.) Additionally, the Blalock Claimants allege that Defendant MCG knew or should have known that Dr. Patel "was performing unnecessary dental procedures" and "was not qualified to perform" the dental

19

AO 72A
(Rev.8/8
2)

services that he provided to pediatric patients. (Docket Entry No. 65-4 ¶¶ 21, 23; PSMF ¶ 39; DRPSMF ¶ 39.)

Based on the above allegations, the Blalock Claimants assert claims of professional negligence, negligent hiring, negligent retention, punitive damages - conscious indifference, and punitive damages - specific intent to cause harm. (Docket Entry No. 65-4 ¶¶ 24-53; PSMF ¶ 40; DMRPSMF ¶ 40.) The Blalock Claimants allege that Defendant MCG's conduct "constitutes willful misconduct, malice, fraud, wantonness, oppression, or the entire want of care which would raise the presumption of conscious indifference to consequences." (Docket Entry No. 65-4 ¶¶ 48-49.) The Blalock Claimants further allege that Defendant MCG and Dr. Patel "acted with specific intent to cause

AO 72A

(Rev.8/8

harm." (Id. ¶¶ 52-53.) Plaintiff sent a letter to Defendant MCG indicating that it was defending Defendant MCG in the Blalock Lawsuit under a full reservation of rights. (Docket Entry No. 76-5.)

### e. The Peugh Lawsuit

On October 30, 2014, W.K.P. and his father, Lionel Peugh (collectively, the "Peugh Claimants"), filed a lawsuit against Dr. Patel and Defendant MCG (the "Peugh Lawsuit"). (PSMF ¶ 42; DMRPSMF ¶ 42; DCRPSMF ¶ 42.) The Peugh Claimants allege that, on March 28, 2012, October 11, 2012, and November 1, 2012, W.K.P. obtained dental treatment from Defendant MCG and Dr. Patel. (PSMF ¶ 43; DMRPSMF ¶ 43; DCRPSMF ¶ 43.)

AO 72A
(Rev.8/8

The Peugh Claimants allege that Dr. Patel performed treatments on four of W.K.P.'s teeth, including pulpotomies and crowns on two teeth and two extractions. (PSMF ¶ 44; DMRPSMF ¶ 44; DCRPSMF ¶ 44.) The Peugh Claimants allege that on March 28, 2012, and on November 1, 2012, Dr. Patel used nitrous oxide/anesthesia on W.K.P. (Docket Entry No. 65-5 ¶¶ 9, 11.) The Peugh Claimants also appear to allege that W.K.P. was restrained. (Id. ¶ 22.)

The Peugh Claimants allege that the anesthesia and restraint used on W.K.P. were inappropriate, incorrect, and unlawful. (PSMF ¶ 46; DMRPSMF ¶ 46; DCRPSMF ¶ 46.) The Peugh Claimants further allege that, as a result of this treatment, W.K.P. "suffered physical injury, severe and prolonged pain, [and] mental anguish, and was forced to

22

seek additional dental treatment." (PSMF ¶ 47; DMRPSMF ¶ 47; DCRPSMF ¶ 47.)

Based on the above allegations, the Peugh Claimants assert claims of medical malpractice, battery, negligence under the doctrine of respondeat superior, and punitive damages. (Docket Entry No. 65-5 ¶¶ 14-36; PSMF ¶ 48; DMRPSMF ¶ 48; DCRPSMF ¶ 48.) The Peugh Claimants allege that Defendant MCG's "conduct . . . was intentional, willful and demonstrates that entire want of care which raises the presumption of a conscious indifference to the consequences." (PSMF ¶ 54; DMRPSMF ¶ 54; DCRPSMF ¶ 54.) Plaintiff sent a letter to Defendant MCG indicating that it was defending Defendant MCG in the Peugh Lawsuit

AO 72A
(Rev.8/8
2)

under a full reservation of rights.  (Docket Entry No. 76-5.)

### 4.    The Policies' Provisions

The Policies contain a Commercial General Liability Coverage Form, which, as amended by endorsement, contains the following insuring agreement:

Paragraph 1 – **Insuring Agreement of Section 1 – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**1.    Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does

not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

. . .

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

(PSMF ¶ 50; DMRPSMF ¶ 50; DCRPSMF ¶ 50 (emphasis in original).)   The Policies define an "occurrence," in relevant part, as "an accident." (PSMF ¶ 51; DMRPSMF ¶ 51; DCRPSMF ¶ 51.)

The Policies also contain the following relevant exclusions:

## 2. Exclusions

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

. . .

### o. Professional

(1) "Bodily injury" or "property damage" arising out of the rendering or failure to render any professional service, including but not limited to:

. . .

(b) Medical, cosmetic, dental, ear piercing, hair dressing, massage physical therapy, veterinary, nursing, surgical or x-ray services, advice and instruction[.]

AO 72A
(Rev.8/8
2)

(PSMF ¶ 52; DMRPSMF ¶ 52; DCRPSMF ¶ 52 (emphasis in original).) The Policies also contain an endorsement titled "Exclusion – Services Furnished by Health Care Providers," which states, in relevant part:

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2, Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability**:

With respect to any operation shown in the Schedule [Medical Offices], this insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The rendering or failure to render:

    a. Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages.

AO 72A
(Rev.8/8

    b.    Any health or therapeutic service, treatment, advice or instruction; or

    c.    Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming.

2.    The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or

3.    The handling or treatment of dead bodies, including autopsies, organ donation or other procedures.

(PSMF ¶ 53; DMRPSMF ¶ 53; DCRPSMF ¶ 53 (emphasis in original) (footnote omitted).)

## II.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) allows a court to grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to a

AO 72A
(Rev.8/8
2)

judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of showing the Court that summary judgment is appropriate and may satisfy this burden by pointing to materials in the record. Jones v. UPS Ground Freight, 683 F.3d 1283, 1292 (11th Cir. 2012). Once the moving party has supported its motion adequately, the burden shifts to the non-movant to rebut that showing by coming forward with specific evidence that demonstrates the existence of a genuine issue for trial. Id.

When evaluating a motion for summary judgment, the Court must view the evidence and draw all reasonable factual inferences in the light most favorable to the party opposing the motion. Morton v. Kirkwood, 707 F.3d 1276,

AO 72A
(Rev.8/8
2)

1280 (11th Cir. 2013); <u>Strickland</u>, 692 F.3d at 1154. The Court also must "'resolve all reasonable doubts about the facts in favor of the non-movant.'" <u>Morton</u>, 707 F.3d at 1280 (internal quotation marks and citations omitted). Further, the Court may not make credibility determinations, weigh conflicting evidence to resolve disputed factual issues, or assess the quality of the evidence presented. <u>Strickland</u>, 692 F.3d at 1154. Finally, the Court does not make factual determinations. <u>Rich</u>, 716 F.3d at 530.

## III. Discussion

Plaintiff argues that it has no duty to defend or indemnify Defendant MCG in the Underlying Lawsuits. (<u>See generally</u> Br. Supp. Mot. Summ. J. (Docket Entry No. 76-1).) The Court must address those issues separately, because

30

AO 72A
(Rev.8/8

"[a]n insurer's duty to defend and its duty to indemnify are separate and independent obligations." Allstate Ins. Co. v. Harkleroad, No. 409CV011, 2010 WL 2076941, at *3 (S.D. Ga. May 24, 2010) (alteration in original) (internal quotation marks and citation omitted). If, however, the Court finds that Plaintiff does not have a duty to defend in the Underlying Lawsuits, Plaintiff likewise will not be required to indemnify Defendant MCG if Defendant MCG is ultimately found liable for those lawsuits. Id.

## A. Duty to Defend

"[A]n insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured." Harkleroad, 2010 WL 2076941, at *3. The Court must "look to the allegations of

31

AO 72A
(Rev.8/8

the complaint asserted against the insured . . . to determine whether a claim covered by the policy is asserted." Id. "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." Id. If, however, "the complaint filed against the insured does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit." Id.

"As in any dispute over insurance coverage, the Court begins by examining the source of coverage itself–the general promises of coverage made in the insurance policy. If the general policy does not cover the claim in question, an inquiry into any applicable exclusions is unnecessary." Harkleroad, 2010 WL 2076941, at *4 (internal quotation

AO 72A
(Rev.8/8
2)

marks and citations omitted). "Under Georgia law, the party seeking insurance coverage bears the burden of proving that coverage exists." Maryland Cas. Co. v. Salon Ave. Suite 2, Civil Action File No. 1:13-CV-3056-TWT, 2014 WL 4925623, at *5 (N.D. Ga. Sept. 29, 2014) (footnote omitted); see also Chix v. Georgia Farm Bureau Ins. Co., 150 Ga. App. 453, 434, 258 S.E.2d 208, 209 (1979) ("The burden of proof was upon the plaintiff to prove that he had sustained a loss covered by the policy." (internal quotation marks and citation omitted)).

"Insurance in Georgia is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous terms." Hurst v. Grange Mutual Cas. Co., 266 Ga. 712, 716, 470 S.E.2d 659, 663 (1996). "[A]n

insurer may fix the terms of its policy as it wishes, insuring against certain risks and excluding others, provided the terms are not contrary to law." Id.

A court construing an insurance policy must attempt "to ascertain the intention of the parties by looking to the insurance contract as a whole." Ryan v. State Farm Mut. Auto. Ins. Co., 261 Ga. 869, 872, 413 S.E.2d 705, 707 (1992). A court first must take into consideration the ordinary and legal meaning of the words used in the policy. Id. Thus, "[i]f the terms of an insurance contract are unambiguous, clear, and capable of only one reasonable construction, they must be taken in their plain, ordinary, and popular sense as may be supplied by common dictionaries." York Ins. Co. v. Williams Seafood of Albany, Inc., 223 F.3d

34

AO 72A
(Rev.8/8
2)

1253, 1254 (11th Cir. 2000) (internal quotation marks and citation omitted).

If a provision of an insurance policy "is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous." Hurst, 266 Ga. at 716, 470 S.E.2d at 663. Under those circumstances, the Court must construe the policy strictly against the insurer, as the drafter, and in favor of the insured. Id.

Here, the Policies provide coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage,'" and further states that the Policies apply "to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage'

AO 72A
(Rev.8/8

is caused by an 'occurrence' that takes place in the 'coverage territory.'" (PSMF ¶ 50; DMRPSMF ¶ 50; DCRPSMF ¶ 50.) The Policies define an "occurrence" as "an accident." (PSMF ¶ 51; DMRPSMF ¶ 51; DCRPSMF¶ 51.)

"Georgia courts define accident in the insurance coverage context as an event which takes place without one's foresight or expectation or design." Harkleroad, 2010 WL 2076941, at *5 (internal quotation marks and citation omitted); see also Owners Ins. Co. v. James, 295 F. Supp. 2d 1354, 1363 (N.D. Ga. Nov. 7, 2003) (noting that Georgia courts have construed "accident" "to signify an unintended happening rather than one occurring through intention or design" (internal quotation marks and citation omitted)).

AO 72A
(Rev.8/8
2)

Further, O.C.G.A. § 1-3-3 provides that an "'[a]ccident' means an event which takes place without one's foresight or expectation or design." O.C.G.A. § 1-3-3.

"[C]ourts have generally held that where an act is intentional, it does not constitute an accident as that term is defined in an insurance policy." <u>Owners Ins. Co.</u>, 295 F. Supp. 2d at 1363 (internal quotation marks and citations omitted). Further, intentional conduct premised on erroneous information also is not an accident, for purposes of Georgia law. <u>Mindis Metals, Inc. v. Transp. Ins. Co.</u>, 209 F.3d 1296, 1297 (11th Cir. 2000) (per curiam).

Here, all of the claims in the Underlying Lawsuits arise from injuries that resulted from work performed by Dr. Patel. That work was intended "and thus does not constitute an

37

'accident' under the insurance policies; therefore, any damage allegedly resulting from that work is not covered by the policies." Owners Ins. Co., 295 F. Supp. 2d at 1364; see also Georgia Farm Bureau Mut. Ins. Co. v. Hall Cnty., 262 Ga. App. 810, 813, 586 S.E.2d 715, 717-18 (2003) (finding that policy did not provide coverage based on injuries arising from insured's entering into contract with third party for timber harvesting on property that county was condemning; the insured's "decision to enter into the contract with [the third party] was a deliberate, intentional act of which the damages were a natural and expected consequence" (emphasis in original)). As such, Plaintiff has no duty to defend Defendant MCG from the claims in the Underlying Lawsuits. Likewise, Plaintiff has no duty to

38

AO 72A
(Rev.8/8
2)

indemnify Defendant MCG for any liability that Defendant MCG may incur from those claims. Harkleroad, 2010 WL 2076941, at *3.

Alternatively, Plaintiff argues that the exclusion for services furnished by health care providers applies to the claims in the Underlying Lawsuits. "Under Georgia law, an insurer seeking to invoke a policy exclusion carries the burden of proving its applicability in a given case." Harkleroad, 2010 WL 2076941, at *6 (internal quotation marks and citation omitted). The Court must strictly construe exclusions. Id.; see also Furgerson v. Cambridge Mut. Fire Ins. Co., 237 Ga. App. 637, 639, 516 S.E.2d 350, 352 (1999) ("Exceptions and exclusions to coverage must be construed strictly in favor of the insured and against the

39

insurer."). If, however, the policy language is "clear, explicit, and unambiguous," the court must enforce the policy as written. <u>Ryan</u>, 261 Ga. at 872, 413 S.E.2d at 707; <u>Furgerson</u>, 237 Ga. App. at 639, 516 S.E.2d at 352.

The Exclusion – Services Furnished by Health Care Providers endorsement provides that the Policies will not provide coverage for "bodily injury," "property damage," or "personal and advertising injury" arising from "[t]he rendering or failure to render . . . [m]edical, surgical, dental, x-ray or nursing service, treatment, advice, or instruction, or the related furnishing of food or beverages." (PSMF ¶ 53; DMRPSMF ¶ 53; DCRPSMF ¶ 53.) Here, all of the claims in the Underlying Lawsuits arise from the provision of dental services. As a result, the Exclusion – Services Furnished

40

by Health Care Providers bars coverage for those claims. Plaintiff thus has no duty to defend Defendant MCG in the Underlying Lawsuits. Likewise, it has no duty to indemnify Defendant MCG for any liability that Defendant MCG may ultimately incur in the Underlying Lawsuits. Harkleroad, 2010 WL 2076941, at *3

Defendants, however, argue that the Policies provide coverage for the negligent hiring and negligent retention claims. This argument fails because all those claims arise from injuries that occurred as a result of the dental services provided by Dr. Patel. As such, the Policies do not provide coverage for those claims--both because the injuries do not qualify as "accidents" and because the injuries arise from conduct for which the Exclusion – Services Furnished by

41

Health Care Providers applies. See Salon Ave. Suite 2, 2014 WL 4925623, at 6 ("Where negligence is asserted as a concurrent cause of harm, an insurer does not need to provide coverage where the injury clearly arose out of conduct excluded by the policy." (footnote omitted)); Maryland Cas. Co. v. Florida Atlantic Orthopedics, P.L., 771 F. Supp. 2d 1328, 1334 (S.D. Fla. Feb. 24, 2011) (finding insurer had no duty to defend insured against claims for negligence and negligent retention and hiring where policy excluded coverage for bodily injury arising from rendering or failure to render medical, surgical, and health treatment; "[h]iring medical staff and implementing appropriate emergency procedures is an intricate part of the provision of medical services"); Continental Cas. Co. v. H.S.I. Fin.

42

AO 72A
(Rev.8/8

Servs., Inc., 266 Ga. 260, 262, 466 S.E.2d 4, 7 (1996) (holding that, where claims for negligence and malpractice against law firm and partners were based on failure to supervise and mitigate another partner's criminal acts, those claims "arose out of the dishonest, fraudulent, criminal and malicious conduct engaged in by [the other partner], bringing those claims within the scope of the policy's exclusionary clause"); see also Jefferson Ins. Co. of N.Y. v. Dunn, 269 Ga. 213, 215, 496 S.E.2d 696, 699 (1998) (finding policy that excluded coverage for injuries caused by assault and battery also excluded coverage for negligent supervision that arose out of assault and battery). The Court therefore rejects Defendants' contention that Plaintiff is obligated to defend or indemnify Defendant MCG

AO 72A
(Rev.8/8

in the Underlying Lawsuits for the negligent hiring and negligent retention claims.

## B. Punitive Damages

Plaintiff also argues that it has no obligation to provide a defense for, or to indemnify Defendant MCG for, punitive damages in the underlying lawsuit. Plaintiff points to no provision of the Policies that expressly excludes coverage for punitive damages. In Georgia, "an insurer must expressly and specifically exclude punitive damages if it does not intend to provide coverage therefor." Nationwide Mut. Fire Ins. Co. v. Kim, 294 Ga. App. 548, 554, 669 S.E.2d 517, 522 (2008). This is true even where the policy "contains an exclusion for bodily injury or property damage caused by intentional acts, but does not contain an

44

AO 72A
(Rev.8/8

exclusion for punitive damages." Id. (footnote omitted). Thus, Plaintiff cannot prevail on its argument that the Policies exclude coverage for punitive damages.

If a policy does not provide coverage for underlying claims, however, the punitive damages claim based on the underlying claims also will not be covered. Harkleroad, 2010 WL 2076941, at *6. Here, for the reasons discussed supra Part III.A., the Policies do not provide coverage for the underlying claims. Plaintiff consequently has no duty to defend Defendant MCG with respect to the punitive damages claims in the Underlying Lawsuits. Likewise, Plaintiff has no duty to indemnify Defendant MCG for any liability that Defendant MCG may ultimately incur for those claims. Harkleroad, 2010 WL 2076941, at *3.

AO 72A
(Rev.8/8
2)

## C. Summary

In sum, the Court finds that Plaintiff has no duty to defend Defendant MCG for any of the claims asserted in the Underlying Lawsuits. Likewise, Plaintiff has no duty to indemnify Defendant MCG for any liability that it ultimately may incur for those claims. The Court therefore grants Plaintiff's Motion for Summary Judgment.

## IV. Conclusion

ACCORDINGLY, the Court **GRANTS** Plaintiff's Motion for Summary Judgment [76]. The Court **DECLARES** that Plaintiff has no duty to defend or indemnify Defendant MCG in connection with any demands, claims, or suits filed or asserted by Defendants Terri Blalock, as parent of E.B., E.B., a minor, Angela Carter and Jerry Carter, as parents of

AO 72A
(Rev.8/8

B.C., B.C., a minor, Brandi Marie Shanks, as parent of B.S.F., B.S.F., a minor, E.E., a minor, by and through his mother and next friend Carrie Edmondson, W.K.P., a minor, and Lionel Bernard Peugh, as parent of W.K.P. Because this Order resolves all of Plaintiff's claims at issue in this action, the Court **DIRECTS** the Clerk to close this case and enter judgment in favor of Plaintiff.

IT IS SO ORDERED, this the 4 day of June, 2015.

_____

UNITED STATES DISTRICT JUDGE

AO 72A

(Rev.8/8